## CHICAGO *v.* GREER.

1. The court expresses its dissatisfaction at the manner in which a plaintiff in error sends a case here, without argument, either oral or printed, thus leaving the court to search the entire record to find out whether error had been committed; increasing the trouble moreover by a general exception to the charge instead of specific exceptions to parts complained of; this, in violation of the Rules of Court.

2 Where a party had contracted for a large quantity of a thing in a manufactured state, and refused afterwards to take it, evidence is properly given that material in a raw state had been so far prepared to manufacture the thing contracted for as that it was injured for anything else; and that there was no sale in the market for the thing contracted for and refused.

3. An admission by the authorized agent of a city, authorized to contract for a thing for the city's use, that he *thought* the city liable, to a certain extent, for a thing which was furnished to it in professed discharge of a contract, *because the city had used the thing*, may go to the jury as an admission of the fact of use, in suit against the city by the party furnishing the thing, and where the city sets up as a defence that the thing furnished was not the thing agreed to be furnished.

4. A person having had sufficient experience to be an expert in testing the strength of hose, may state that a particular test applied *ex parte*, was not a fair one.

5. At what rates other persons offered or undertook at another time to make a particular thing for a defendant, is not evidence in a suit by a plaintiff on the defendant's *contract* to pay him a greater sum if he would make the same thing, at the time contracted for.

6. The testimony of a person, not an expert, that fire-hose of a peculiar size which the city had contracted for, would "not answer the city's purpose," is inadmissible on a suit by the manufacturer against the city for the contract price; inadmissible both because the witness is not an expert, and because in such a suit the only questions are what did the contract call for, and what did the manufacturer furnish.

7. Exceptions to a charge dismissed, the jury having, as this court considered, been rightly charged as to law, and the facts having been fairly left to them.

ERROR to the Circuit Court for the District of Northern Illinois; the case was thus:

In July, 1867, the city of Chicago published an advertisement inviting bids for the manufacture of 13,000 feet of leather fire-hose, containing specifications as to the quality of material and manufacture, and providing that the hose.

should be *warranted to stand a pressure of 200 lbs. to the square inch.* The hose was to be deliverable and to be tested in Chicago, on the 1st September. One Greer, a manufacturer of hose in Philadelphia, in response, made a bid in writing for the contract, the hose " *to be tested in a fair and impartial manner, and to be made to stand* 200 *lbs. pressure to the square inch,*" &c. This bid or proposal was accepted and awarded to Greer, who immediately began to make the hose. By the end of August he had made and sent to Chicago 2150 feet of it. At that date he had also made 1000 feet more, which was on the way to Chicago when he received a telegram to send no more hose; the telegram stated that it did not stand the contract test, would not bear the stipulated pressure, and would not be accepted; and also that the hose which had been received was subject to his order. Greer had, at this time, also procured and prepared the material for, and was engaged in the manufacture of the remainder of the hose contracted for. Greer, upon receiving the telegram, went to Chicago, saw the city agents, and informed them that he declined to waive his rights under the contract; that he desired a public trial in the city of Chicago, and asked that an engine might be placed at his disposal, for the purpose of testing the hose. The board informed him that it had been tested and had burst, refused to allow him the use of an engine, and told him that they had entered into a contract with another party, one Gates, for 10,000 feet of hose, and that they could not do anything with regard to his hose. After some discussions between the parties—the city still declining to keep the hose which they had received, or to receive any new—Greer sued them in *assumpsit* to recover damages for an alleged breach of contract. The principal questions mooted at the trial were whether the contract set forth in the declaration was proved, whether the plaintiff had complied with the obligations assumed by him (the chief question here being as to whether the hose came up to the test), and what damages, if any, had been sustained by the plaintiff in consequence of the refusal of the city to receive the hose and pay for it according to the contract

The jury found a verdict for the plaintiff for $11,093.50, and a motion for new trial having been made and refused, judgment was entered against the city. It now sued out this writ of error.

The plaintiff, Greer, on the trial, sought to prove that his hose had been subjected to two public tests in Philadelphia, in November and December, 1867, and at each of such tests sustained without injury a pressure of more than 200 pounds per square inch. The city, on the other hand, proved two tests in Chicago, prior to the rejection of the hose, which, as they considered, showed a different result. The hose had in fact from some cause, burst. Greer, in answer to what was thus set up, sought to show that these last tests were made without notice to him, in his absence, and that they were not made "in a fair and impartial manner." On the case coming here it appeared that the plaintiff had taken exceptions to evidence, and had excepted *generally* to the charge, no particular parts in which it was alleged to be erroneous being mentioned.

I. *The exceptions to evidence* were:

*First.* Because the court allowed Greer to show that about 700 sides of leather were cut, making 7000 feet of $10\frac{1}{2}$ inch hose; that it was impossible to use that leather for any other than that size of hose called $10\frac{1}{2}$ inch hose. Also, that $10\frac{1}{2}$ inch hose was a remarkable size in the United States, and not made except on special order; that he could not use such hose except for Chicago; that to cut it down to 9 inch hose would be a loss both of material and labor.

*Second.* Because it allowed a statement of one of the fire commissioners of the city, which he had made in conversation with an agent of Greer, after a question about the hose had arisen, to go to the jury. This commissioner was one of a committee who made the contract, and the statement was that "to a certain extent he thought the city liable for damages on the contract, *on account of using the hose for fires.*" The court, in allowing the statement to go to the jury, told them that what was stated "by the authorized

agent of the board as a fact, and not as an opinion," would be competent.

*Third.* Because one Edward Smidt (who had testified that he was a machinist for fifteen years, and manufacturer of steam-gauges for eleven, that he had tested leather fire-hose *several* times, though he had not had *much* experience in doing so), was allowed to state " whether, in order to make a fair and accurate test of such hose by water pressure," it would be necessary to do certain things specified.

*Fourth and Fifth.* Because the court refused to allow the city to show the rate at which they had contracted for hose with Gates, on the difficulty occurring with the plaintiff, Greer, and how offers made by other persons compared with Greer's when *he* took the contract.

*Sixth.*—The point of this exception is revealed by the bill, giving the testimony on cross-examination by Greer's counsel of one Richards, a witness of the city, and for twenty years a tanner and currier, and who had given his opinion as an expert as to the proper mode of testing fire-hose. The bill ran thus:

*Q.* What is the best leather for making leather fire-hose?

*A.* Leather made from slaughtered hides.

*By Mr. Davis, counsel of the city.* I submit that this is immaterial; the witness was not examined in regard to it. The contract calls for a specific kind of leather.

(Objection overruled by the court; to which ruling the defendant's counsel then and there excepted.)

*Q.* What kind of leather was the hose you saw tested?

*A.* It was a superior grade of leather; I call it the "Union tanned."

*Seventh.*—Because the court refused to let the city put in evidence a copy of a letter written by the city to Greer, after the hose sent by him to the city had been tested by such a process as they professed to consider a fair one; no notice having been given by him to produce the original.

*Eighth and Ninth.*—Because the court refused to allow one of the fire commissioners of the city, whose business it was

to assist in investigating the origin of fires, but who, on a question by the court, stated that he did not profess to be an expert in hose, to state whether *he* considered that Greer's hose would answer the city's purpose; whether it could be safely used at fires, and whether it was of any value to the city.

*Tenth.*—Because the court refused to allow a witness to testify how the quality of the hose which they had got from Gates compared with the quality of the hose sent by Greer.

II. *Exceptions as to the charge.*—The court charged on the subject generally; charging,

1st. *In respect to the time when the hose was to be delivered,* substantially; that Greer's agreement was to furnish the hose by the 1st of September, 1867; and that unless the delivery, at that time, was waived by the city; or unless the city had rendered the delivery, or offer to deliver, by that time, an unnecessary act, Greer was bound to furnish the hose by that day.

2d. *In respect to the failure to put the contract in writing.*—After observing that one of the city commissioners had testified that this contract was in the usual way, and that if this was the usual way in which contracts with the city were made, it was to be regretted that a practice of thus making them had grown up; that the true way for the protection of the interests of all parties was, when an advertisement was made for proposals, and they were presented and accepted, that a written contract should be entered into by the city with the party proposing, setting forth specifically the terms of the contract—the court charged that if the advertisement was clear and distinct, and if the proposals were also clear, and they were accepted in the terms in which they were made, simply and absolutely, that *that* contained the contract between the parties.

3d. *As to the testing of the hose.*—This part left to the jury the question of fact, viz.: whether the hose was made to stand, when tested in a fair and impartial manner, a pressure of 200 pounds to the square inch; whether the tests, at Chicago, when the hose burst, had been applied in a fair and

impartial manner, and in a way to do justice to the rights of both parties, plaintiff and defendant?

The court further said:

"You will bear in mind, of course, in connection with this, the testimony as to the test that is generally applied in other cities, as compared with what was applied here. And also the testimony bearing upon this point: that it could hardly be expected that every foot of hose that might be made would stand such a pressure; that there might be some latent defects in the leather, which in testing might not stand such a pressure. Of course, as I understand the testimony, if there should be a defect in some instances in that respect, that would not absolutely defeat the liability of the city. Because it would be fair that the contract should be understood in the manner in which men who are skilled in the business would understand it. And as I apprehend the testimony, it might well happen that in so large a quantity of hose as the plaintiff agreed to furnish, there might be occasionally a defect in the leather which would be unknown, and which no skill could entirely guard against. I think that, under such circumstances, it is only fair that the party should have an opportunity to remedy the defect up to a certain limit. If you think there is such a deficiency in this respect, so many defects as to satisfy you the hose did not come up to the quality designated in the contract, then, of course, the party has not complied with the contract in that particular."

The city excepted generally to so much of the charge as related to the three matters above presented.

*No person appeared as counsel for the city and neither was any brief filed for it;* the case being submitted by it on a record of a hundred and forty-one pages.

*Mr. Goudy for the defendant in error.*

Mr. Justice STRONG delivered the opinion of the court.

Precisely what questions are intended to be raised here we are not informed. No oral argument has been submitted on behalf of the plaintiff in error. No brief of points has been filed, nor has any assignment of errors been made.

We are left to search the entire record to discover, if possible, some fault in the pleadings, or in the rulings of the Circuit Court, and this without any intimation that any error is alleged to have been committed, other than is given by the fact that a writ of error has been sued out. We find, indeed, that ten exceptions were taken at the trial to the admission or rejection of evidence, the effects of which were to bring upon the record the rulings of the court, but we are not informed that it is even claimed those rulings were erroneous. Three exceptions, most indefinite, were also taken to the charge of the court delivered to the jury, but it is not now alleged that any portion of the charge was not in strict accordance with the law. In view of this state of facts the judgment might, with great propriety, be affirmed without further remarks. We have, however, examined all the exceptions taken in the court below, and discovered nothing of which the plaintiff in error has any right to complain.

The first exception was to the admission of evidence tending to show what progress the plaintiff had made toward the performance of his part of the contract when the city gave him notice that the hose would not be received. Subject to the exception it was proved that the plaintiff then had on hand a large quantity of leather, which he had cut down for seven thousand feet of ten-and-a-half-inch hose, such as was required by the contract; that there was no sale in the market for such hose; that consequently, on the refusal of the defendant to take it, he was compelled to cut it down again for nine-inch hose, which could be sold, and that this involved a large loss of leather, as well as of labor. It is plain the evidence has a direct bearing upon the question what amount of damages the plaintiff was entitled to recover, if entitled to recover at all. The loss resulting from the waste of leather and of labor was an immediate and necessary consequence of the refusal of the city to comply with its contract. The evidence was, therefore, properly received.

The second exception was, that the court permitted the plaintiff to give in evidence the declaration of one of the board of fire commissioners of the city, who were authorized

to purchase hose, to the effect that he thought the city was liable on the contract, to a certain extent, on account of its having used the hose for fires. It may be admitted that the witness's expression of opinion, had it stood alone, would not have been admissible; but it was connected with the admission of the fact that the city had used a portion of the hose, not simply in testing it, but for the extinguishment of fires. The fact was a material one, bearing upon the questions whether there had been a contract, and whether the hose delivered was such as the contract demanded. The admission of the fact was by an authorized agent of the city, one who had participated in making the contract. There was, therefore, no error in receiving the evidence.

We discover no error in admitting the testimony of Edward Smidt, to which exception was taken. He was proved to have been an expert, sufficiently to justify his being permitted to state what is, and what is not, a proper mode of testing the strength of leather fire-hose. He was a manufacturer of steam-gauges, and he had repeatedly tested hose. It having been claimed by the defendant that the hose offered would not bear the required test, it was certainly competent for the plaintiff to prove that the *ex parte* test applied by the city was not a fair one, and, of course, to prove what constitutes "a fair and satisfactory test," such as was provided for in the contract.

The fourth and fifth exceptions present the question whether the defendant should have been permitted to prove at what rates it had made a contract for hose with another party, and what bids were offered when that other contract was made. It is impossible to see how this could have had any legitimate bearing upon the questions presented by the case. If the city was liable at all to the plaintiff, clearly its liability can be measured only by the contract made with him. The extent of its obligation is not to be found in another contract made with another party. The evidence offered was, therefore, rightly excluded.

The sixth exception is to an answer given by one of the defendant's witnesses to a question propounded to him on

cross-examination. He was asked, "What is the best leather for making leather fire-hose?" to which he answered, "Leather made from slaughtered hides." To this the defendant objected, and took an exception because the court admitted it. We are not informed, and we do not perceive how he could have been prejudiced by the answer. Let it be, it was immaterial; still it was not hurtful. It was, however, admissible, if for no other reason, because it tended to furnish a test of the value of the opinions the witness had expressed in his testimony in chief.

The next exception is that the court refused to permit a copy of a letter to the plaintiff to be given in evidence, when no notice had been given to produce the original. It needs no argument to show that the decision of the court was correct.

The eighth and ninth exceptions are that the court would not allow a witness, not an expert, to give his opinion that the plaintiff's hose would not answer the purpose of the city, that it could not be safely used at fires, and that it was of no value to the city. We see no error in this. To say nothing of the medium of proof (the opinion of a witness not an expert), the subject was objectionable. It is obviously quite immaterial whether the expectations of the city from the contract were realized, or whether it had made an injudicious bargain. The real question was, whether the plaintiff had fulfilled, or offered to fulfil, his part of the contract. It is observable, however, that the witness did afterwards substantially answer the questions proposed, and that the defendant had the benefit of his answers.

The tenth exception is that a witness, after having testified he had not examined the quality of the plaintiff's hose at all, was not permitted to answer the question how it compared with hose the city had bought from another person. How he could have answered the question it is not easy to see, but, if he could, the hose purchased from that other person was not the standard by which that of the plaintiff was agreed to be measured. The parties had fixed their own standard. The only legitimate rule was that which the contract provided.

We pass now to the exceptions taken to the charge of the court. They are to so much of the charge as relates to the time within which the contract was to be performed, and also to so much as relates to the testing of the hose, and also to so much as relates to the failure to put the contract in writing. In regard to these it may be observed that they are not taken conformably with the fourth rule of the court, which requires an exceptant to state distinctly the several matters of law in the charge to which he excepts, and declares that such matters of law, and those only, shall be inserted in the bill of exceptions and allowed by the court. But we have examined the entire charge and found nothing of which the plaintiff in error has any just reason to complain. It was fairly submitted to the jury to find what the contract was, whether it had been concluded, what the parties had agreed respecting the time for performance by the plaintiff, whether the plaintiff was in any default, whether the hose offered came up to the required standard, and whether the tests applied had been made, as the contract required, "in a fair and impartial manner." In regard to the failure to put the contract in writing the court said little more than to express regret that the city usually made such contracts (as it had been proved), without reducing them to a written form, adding only, "that if the advertisement" (for proposals), "is clear and distinct, and if the proposals are also clear, and they are accepted in the terms in which they are made, simply and absolutely, that contains the contract between the parties." Surely this was unexceptionable. We add only, that a motion for a new trial, being an appeal to the discretion of the court in which the trial has taken place, the action of that court in overruling it is not reviewable in error.

　　　　　　　　　　JUDGMENT AFFIRMED WITH COSTS.