**EASTERN ROTORCRAFT COR-
PORATION**

v.

**The UNITED STATES.**

No. 257–62.

United States Court of Claims.
June 14, 1968.

Andrew R. Klein, Philadelphia, Pa., attorney of record for plaintiff. Alfred C. Aurich, Philadelphia, Pa., of counsel.

G. M. Paddack, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

OPINION

PER CURIAM:

This case was referred to Trial Commissioner Donald E. Lane with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on June 7, 1967. Exceptions to the commissioner's findings and recommended conclusions of law were filed by defendant, briefs were filed by the parties and the case has been submitted to the court on oral argument of counsel. Since the court is in agreement with the opinion, findings and recommended

conclusion of law of the commissioner it hereby adopts the same as the basis for its judgment in this case as hereinafter set forth. Therefore, the court concludes that claims 1, 2, 4, 6, and 7 of patent 2,-715,008 are valid and have been infringed by defendant; that claims 1, 3, and 4 of patent 2,903,767 are valid and have been infringed by defendant's unlicensed use of the subject inventions; that plaintiff is entitled to recover reasonable and entire compensation; and that judgment is entered for plaintiff to that effect with the amount of recovery to be determined pursuant to Rule 47(c) (2).

## OPINION OF COMMISSIONER

LANE, *Commissioner:*

This is a patent suit under Title 28 U.S.C. § 1498, in which plaintiff seeks to recover reasonable and entire compensation for the alleged unauthorized use of patented inventions. Plaintiff alleges infringement of claims 1, 2, 4, 6, and 7 of U.S. Patent No. 2,715,-008 and claims 1, 3, and 4 of U.S. Patent No. 2,903,767. Patent 2,715,008, sometimes referred to as the '008 patent, issued August 9, 1955, for "Apparatus For Cargo Tie-Down And The Like." Patent 2,903,767, sometimes referred to as the '767 patent, issued September 15, 1959, for "Chain Securing Device With Tilting Block." Plaintiff, Eastern Rotorcraft Corporation, is the owner of the patents in suit by assignment from the patentee, J. R. Huber. The parties have agreed to defer the accounting issues until after a decision by the court on liability.

It is concluded that claims 1, 2, 4, 6, and 7 of the '008 patent are valid and infringed; that claims 1, 3, and 4 of the '767 patent are valid and infringed; and that the defendant is not entitled to a license under either patent.

### Patent No. 2,715,008

The '008 patent describes and claims a device for securing cargo during transport, utilizing high strength flexible cable engaging the cargo as a securing member. The wire cable is held tight by a lightweight, compact, adjustable, anchoring device. The anchoring device, sometimes termed a tie-down, permits easy adjustment of the length and tension of the cable and prevents damage to the cable due to clamping pressure which must be applied to secure the cable about the cargo. The tension on the cable is used to transmit a reduced and variable clamping force to the free end of the cable. Finding 3 sets forth a detailed description of the construction and operation of the claimed invention.

Plaintiff asserts that claims 1, 2, 4, 6, and 7 of the '008 patent are infringed by defendant's use of devices supplied by the Monmouth Electric Company. Defendant asserts these claims are invalid under the provisions of Title 35 U.S.C. § 103 because the subject matter of the invention would have been obvious to one skilled in the art at the time the invention was made. No single patent relied on by defendant discloses a device containing all the elements recited in the '008 patent claims as required for an anticipation under Title 35 U.S.C. § 102.

Recently, the Supreme Court laid down general guidelines to be followed in applying Section 103.

* * * Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966).

The prior art principally relied on by defendant includes patents to Passek, No. 2,066,049, Hyatt, No. 2,540,887, and Reynolds, No. 1,913,566 which are described in findings 6, 8, and 10. Differences between the subject matter of the accused claims and each of the Passek, Hyatt, and Reynolds devices are set forth in findings 7, 9, and 11, respectively. The dissimilarity in the basic function and structure of each of these prior art

patents from the other prior art patents, and also the '008 patent claims, results in a finding that the combination claimed in the '008 patent is not suggested by the prior art. Even if the separate *concepts* of the prior art are combined using the '008 patent as a blueprint, with an impermissible hindsight reconstruction of the prior art, certain elements and functions of the claimed tie-down remain novel and unobvious. The prior art as a whole fails to suggest a cable-deflecting member for deflecting the loaded end of a cable in a manner which imposes increased tension on the loaded run of the cable, increases the frictional contact of the cable about a snubbing drum, and transmits a clamping force to the free run of the cable. The primary prior patents do not suggest a snubbing action wherein friction between the cable and a snubbing drum resists the majority of the tension force tending to slide the cable longitudinally from a tie-down. No combination capable of the easy length adjustment and release features of the claimed tie-down is supplied by combining the prior disclosures. It is concluded that the '008 patent claims are drawn to subject matter which was unobvious as a whole to one skilled in the art at the time the invention was made.

### Patent No. 2,903,767

The '767 patent describes and claims a cargo tie-down, an anchoring structure for use with a link type chain, to prevent shifts in position of heavy cargo. The '767 cargo tie-down device includes a hook at one end for quick attachment to a deck ring or ground anchor, and a tilting block for connection with and disconnection from the chain links. The tilting block is pivotally supported near one end of the frame of the tie-down device and may be pivoted between a loaded position and a release position wherein the chain may be disengaged from the block while under tension. The tilting block contains a slot and a pocket to hold two adjacent links of the chain. A pivoted primary latch is provided to regulate the pivotal movement of the block. A pivoted secondary latch is provided to prevent accidental release of the chain from the block. The secondary latch permits quick removal of one chain link and insertion of another link when adjusting the effective length of the chain, without disturbing the primary latch. The secondary latch is inactive when the primary latch is released. The pocket in the tilting block is shaped to engage a chain link disposed generally transverse to the loaded chain.

■ Plaintiff asserts defendant's use of cargo tie-downs supplied by the AID Corp. infringes claims 1, 3, and 4 of the '767 patent. The principal defenses raised by the defendant with regard to the '767 patent are (1) that patent claims 1, 3, and 4 are invalid in view of the prior art, (2) that the defendant has not infringed these claims, and (3) that the defendant is entitled to a license under the '767 patent.

In support of its contention of invalidity in view of the prior art, defendant has cited a number of patents and publications. Patents to Stahl, et al., No. 1,963,-634, and to Harrop, No. 907,495, described in findings 19 and 21, are each alleged by defendant to *anticipate* patent claim 3 as that term is used to denote lack of novelty under Title 35 U.S.C. § 102. The teachings of these two patents when compared with patent claim 3, do not illustrate the same combination of elements. Nor does any construction disclosed by these patents perform the same function as the combination recited in claim 3 to achieve substantially the same results.

Patent claim 3 is also found not invalid under the provisions of Title 35 U.S.C. § 103. The basic utility of a tilting block for use as a cargo tie-down would not have become obvious to one skilled in the art having knowledge of the Stahl and Harrop patents. The recited spatial and functional relationships of the elements of patent claim 3 are essential to successful operation of the device as a tie-down. These relationships, nowhere suggested in the Stahl and Harrop patents, are precisely defined and set forth in claim 3. The frame recited in patent claim 3 is located in line with a loaded

chain connected thereto; the tilting block incorporates a chain pocket adapted to engage a chain link disposed generally transverse to the loaded chain; the tilting block incorporates a slot to accommodate a chain link extended in the direction of the loaded chain; the block is rotatable to allow it to tilt so that the transversely disposed link may be moved to a position of disengagement with the block under the chain load; the cylindrical stop member extends between side plate parts to limit movement of the block and structurally strengthen the frame. These specific recitals define a structure that would not have been obvious as a whole to one having skill in the cargo tie-down art at the time the Huber '767 invention was made.

Four patents have been relied on by defendant in asserting the invalidity of patent claims 1 and 4 under Title 35 U.S. C. § 103. The two basic disclosures which defendant urges against these claims are the Stahl and Harrop patents discussed supra. Patent claims 1 and 4 recite a secondary latch to engage and retain a chain link in the slot of the block, and defendant has cited the French patent to Aivaz, No. 965,882, and the patent to Moore, No. 1,179,951, in an attempt to show that the added secondary latch element would have been obvious. Claims 1 and 4 use language which differs in terminology, but not in patentable significance, from the language in claim 3 for defining the functional and spatial relationships between the chain, frame, block, pocket, slot, and primary latch member. These relationships make the structures defined in all these claims unobvious. The secondary latch structure is an *added* unobvious feature of patent claims 1 and 4. It is concluded that claims 1, 3, and 4 of the '767 patent are novel and are not drawn to subject matter obvious as a whole. These claims are not invalid under Title 35 U.S.C. §§ 102 and 103.

In support of its defense of noninfringement, defendant has pointed to a pivoted member or lever in the AID tie-down construction which has no counterpart in the plaintiff's patented construction. The tilting block of the AID device is pivotally mounted on the lever which in turn is pivotally supported in the frame. The tilting block plus the lever in AID comprises a unit which performs all the functions of the tilting block of the patent claims. That the AID device involves an additional element does not avoid infringement. See Duo-Flex Corp. v. Building Service Co., 322 F.2d 94, (5th Cir. 1963). The lever, as an additional element, is alleged by defendant to result in an improvement over plaintiff's invention. However, one who practices an improvement invention without a license under the basic patent of another is an infringer, Temco Elec. Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298 (1928).

Defendant also contends that claims 1 and 4 are not infringed by its use of the AID device because these claims when construed in view of the file history require that the secondary latch be supported by a specific member. However, claim 1 when given an interpretation consistent with the patent specification and file history, reads directly on the AID device. Claim 4 does not read directly on the AID device, but it is concluded that this claim is entitled to a range of equivalents which encompasses the positioning of the secondary latch of the AID device. The position of mounting the secondary latch was not a factor which was used to distinguish the Huber application claims from the prior art before the Patent Office. The applicant canceled a claim which defined the position of the secondary latch in more general terms than defined in allowed claims 1 and 4. At the time said claim was canceled, a new claim was submitted and later allowed which claim did not recite a secondary latch and was not limited as to the mounting of the secondary latch. Also, applicant later submitted and obtained the allowance of a claim similar to issued claim 1 except for the description of the mounting of the secondary latch. This later filed claim issued as claim 6. In view of the entire

Huber '767 application file history, it is concluded that the strict application of the doctrine of file wrapper estoppel as urged by defendant is not warranted.

■ The doctrine of file wrapper estoppel does not necessarily apply to the extent of depriving a patentee of all equivalents. Cancellation of a broad claim precludes an extension of claim coverage by equivalents to encompass the entire scope of the canceled claim. However, the patentee after cancellation of a broad claim is still to be afforded protection against obvious and exact equivalents. Southern Textile Machinery Co. v. United Hosiery Mills Corp., 33 F.2d 862, 866 (6th Cir. 1929). In this case, the range of equivalents can permissibly extend at least as far as the recitations relative to mounting of the secondary latch in other allowed patent claims. The secondary latch of the AID device is the exact functional equivalent of the secondary latch of claim 4 and lies within the permissible range of equivalents of claim 4. Claims 1, 3, and 4 of the '767 patent are infringed by defendant's unauthorized use of the AID tie-down device.

Defendant has contended that the Government is entitled to a license to use the '767 patent because of the provisions of fixed price contract No. AF 33(038)–22917, dated March 29, 1951, for 56 aircraft cargo tie-downs and engineering data. The contract included an exhibit setting forth applicable specifications and requirements. The Government's patent rights under the contract are defined by clause 38(b) which requires the contractor (plaintiff here) to grant an irrevocable nonexclusive, nontransferable, and royalty-free license to the Government to practice or cause to be practiced for the Government each "subject invention." The contract definition of the term "subject invention" in clause 38(a)(i) reads:

> The term "Subject Invention" means any invention, improvement or discovery (whether or not patentable) conceived or first actually reduced to practice either (A) in the performance of the experimental, developmental or research work called for under this contract, or (B) in the performance of any experimental, developmental or research work relating to the subject matter of this contract which was done upon the understanding that a contract would be awarded.

■ The 22917 contract required plaintiff to fabricate six 5,000-pound-capacity chain tie-downs and deliver same to the Air Force for test and approval. Approval of the first 6 was required before fabrication of the remaining 50 tie-downs to be supplied together with a set of engineering data prepared in accordance with the contract exhibit. Plaintiff completed all design work under the 22917 contract no later than November 14, 1952, a date prior to the conception and reduction to practice of the invention claimed in the '767 patent. The '767 invention lies without the contract definition of "subject invention" because it was not made in the performance of experimental, developmental, or research work called for under the contract. That the supply phase of the contract remained to be completed at the time the '767 invention was conceived is not material.

Defendant relies on Mine Safety Appliances Co. v. United States, 364 F.2d 385, 176 Ct.Cl. 777 (1966). In that case, which involved a research and development contract, the court held the Government was entitled to a license under a patented invention which was conceived during the existence of the contract and where the subject matter of the invention fell within the scope of the research and development work. In the present case, the '767 invention was conceived *after* the contractor had completed all research, experimental, or developmental work for which he could receive payment by the Government under the 22917 contract.

The relationship between the subject matter of the invention of the '767 patent and the scope of work under contract 22917 involves several factual considerations. First, the performance specifica-

tions stated in the 22917 contract are broad enough to encompass the subject matter of the patented invention. However, the course of action of the contracting parties establishes that the actual scope of development work under the contract was restricted. The starting point for development work under the contract was a prototype tie-down device exhibited by plaintiff to the Air Force just prior to formation of the contract. This prototype incorporated a fixed jaw and a movable jaw to grasp the chain. Development work under the contract involved modifying the prototype to conform to the performance specifications of the contract. The development work was necessary because the 5,000-pound capacity was different from the capacity of chain-type tie-downs then in use. The tie-down device which was accepted by the Air Force under the 22917 contract utilized a fixed jaw and a movable jaw to grasp the chain. Defendant has failed to connect the development work performed under the 22917 contract and paid for by the Government with the conception of the tilting block tie-down device which forms the subject matter of the '767 patent. The fundamental differences in structure and function which exist between the jaw-type tie-down supplied under the 22917 contract and the tilting block tie-down of the patented invention preclude a conclusion that the development work under the 22917 contract led to the '767 invention.

This case does not involve a factual situation wherein the contractor's unilateral action carved out a valuable invention from a Government-financed research project. The evidence shows that engineering and development costs incurred after the design of the tie-downs delivered under the 22917 contract would not be allowable costs under the contract. It is concluded that defendant is not entitled to a license under the '767 patent.

■■ Defendant opposed the admission into evidence of correspondence and memoranda written by J. C. Warfield, Jr.,

Associate Patent Counsel, Office of Patent Counsel, Department of the Navy, for other than the limited purpose of showing existence of such written matter. These writings discuss facts relating to the Government's claim of a license under the '767 patent and also reach a legal conclusion. The Warfield writings include statements of fact made by a public officer in the course of his official duties. Such statements are admissible against the public body which employs him. See George A. Fuller Co. v. United States, 69 F.Supp. 409, 108 Ct.Cl. 70 (1947). Admissibility of these writings conforms to modern concepts of the reasons for the hearsay rule as set forth in the Uniform Rules of Evidence, Rule 63(15). Exclusion of Warfield's admissions because of their content, mixed statements of fact, and conclusions of law, is not required. See City of Chicago v. Greer, 9 Wall. 726, 732–733, 76 U.S. 726, 732–733, 19 L.Ed. 769 (1869). The statements of fact in the Warfield documents are properly receivable in evidence. The defendant has offered no evidence sufficient to overcome said statements. In his written memorandum of a conference with representatives of Eastern Rotorcraft Corporation, Warfield stated that accounting records clearly establish that the Government did not reimburse Eastern Rotorcraft Corporation for the engineering development of the tiltable block chain tie-down device covered by the '767 patent and that said tie-down device was an independent development not under the 22917 contract. These statements by defendant's employee are not in conflict with other evidence presented by the plaintiff in this case.

Summarizing, it is concluded that the patent claims in issue are valid, that the defendant was not authorized or licensed to use the inventions defined therein, and that plaintiff is entitled to recover reasonable and entire compensation for such use, the value of which should be determined in further proceedings pursuant to Rule 47(c).