ATLANTA MOTORING ACCESSORIES, INC., Plaintiff–Appellee,

v.

SARATOGA TECHNOLOGIES, INC., Defendant–Appellant.

No. 93–1575.

United States Court of Appeals, Federal Circuit.

Aug. 16, 1994.

Robert B. Kennedy, Kennedy & Kennedy, Atlanta, GA, argued, for plaintiff-appellee. With him on the brief was Carl M. Davis, II.

John C. Hilton, McCormick, Paulding & Huber, Hartford, CT, argued, for defendant-appellant.

structure." Spec., p. 2.

Before RICH, Circuit Judge, COWEN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

RICH, Circuit Judge.

This appeal in a patent infringement case is from the August 18, 1993, Order of the United States District Court for the Northern District of Georgia, Atlanta Division, granting plaintiff's motion for summary judgment of infringement under the doctrine of equivalents and also holding that there has been no literal infringement of plaintiff's patent. The Order also denied defendant's motion for summary judgment of noninfringement. Defendant appeals the grant of plaintiff's motion and the denial of its own motion. Plaintiff has not cross-appealed the holding of no literal infringement. We reverse and remand.

*The Subject Matter Involved*

Several models of automobiles have removable hardtops which, when removed, present handling and storage problems. Wheeled racks have been devised onto which they may be placed and transported in such fashion as to prevent their being damaged, one of which is the subject of plaintiff's patent in suit, No. 4,830,386 ('386 patent). The problem stated in the patent, which the invention was designed to solve, was that the prior art racks were bulky and took up a lot of space even when not in use. To solve the problem, the named inventors in the patent, plaintiff's assignors, designed a rack having a pair of moveable horizontal legs which, when spread apart, support the hardtop and which can be folded together on their pivots when not in use to take up less floor space. Figs. 1 and 2 of the '386 patent show the rack in its open and closed positions, respectively:

As is apparent, the horizontal legs 14 are pivoted on vertical pins 19 in brackets affixed to the bottom of vertical member 12. At the top of member 12 is a protective pad of soft material 24. Each leg has a cleat 20 at its outer end to prevent the hardtop from slipping off. When in place on the rack, the hardtop rests against pad 24 and can be held in place by straps 50, 54, which can be buckled together.

Claims 1, 2, and 3 of the patent were sued on and read (all emphasis ours):

1. A rack for storing removable automobile hardtops and the like, comprising:

a vertical frame member, and a pair of horizontal frame members, the rear end of

each *horizontal frame member being pivotably mounted to the lower end of said vertical frame member for accurate*

*movement of said horizontal frame members in a substantially horizontal plane,* the vertical and horizontal member [sic] bounding an open space in which an automobile hardtop may be positioned supported upon said vertical and horizontal frame members, the front end of each horizontal frame member having a vertical cleat projecting upwardly therefrom,

whereby the rack may be compactly configured for storage with the horizontal frame members folded together and configured for use with the horizontal frame members extended apart to support an automobile hardtop set upon the horizontal frame members against the vertical frame member.

2. The automobile hardtop storage rack of claim 1, further comprising *wheel means* supporting said rack for rolling movement along a support service.

3. The automobile hardtop storage rack of claim 1, further comprising *cushion means* attached to the upper end of said vertical member and to the upper surfaces of said front ends of said horizontal frame members adjacent to said vertical cleats.

Dependent claims 2 and 3 are of no importance to this case since it is in claim 1, from which they depend, that the significant limitations appear. The added limitations, wheel means and cushion means (which "means" are nothing more than wheels and a cushion), are present in the alleged infringement. Our decision as to claim 1 takes care of claims 2 and 3 which are merely more limited versions of claim 1.

How the alleged infringing device came into being is explained in the following state-ment in the district court's 13–page Order, at pages 1–2:

The plaintiff began to manufacture and sell its rack in 1986. Initially, Mercedes Benz of North America, Inc. ("Mercedes Benz") was a principal customer of the plaintiff. After a price increase in 1990, Mercedes Benz asked the defendant, Saratoga Technologies, Inc. ("Saratoga"), to design a storage rack for it. Saratoga's president, Paul J. Ferrigan, visited the Mercedes plant and was shown several of the plaintiff's storage racks. Mr. Ferrigan subsequently asked Richard F. McRay to design a foldable storage rack. Mr. McRay had a copy of the plaintiff's promotional flyer with a picture of the plaintiff's rack and, at a later date, was given a copy of the plaintiff's '386 patent. In June 1991 the defendant began to manufacture and sell its own automobile hardtop storage rack to Mercedes Benz.

Other evidence shows that Mercedes preferred defendant's rack to plaintiff's, plaintiff lost its customer, and brought this suit in an effort to stop the competition. This is a clear case of an effort to design around plaintiff's patent and the realistic issue is whether the effort succeeds.

We will now describe defendant's hardtop rack and its operation, on which it too eventually obtained a patent.

Defendant Saratoga's rack is fully described in its patent No. 5,221,066 issued June 22, 1993, to Ferrigan and McRay, above mentioned. It is more complex than plaintiff's rack in that it collapses in two respects, both in its vertical dimension and in the mechanics of the separation and mounting of its legs. The following drawings are from the patent:

FIG. 1

FIG. 2

FIG. 3

Fig. 1 shows the rack in its fully collapsed position in which it can be carried by a handle 10a. Fig. 3 shows the rack in its "deployed" position to support the hardtop outlined in broken lines and designated R. Fig. 2 shows an intermediate position about half way between collapsed and deployed. From these figures it will be realized that the spreading of the leg members 12, 14 takes place upon rotation through 180° of the short column member 10 from the Fig. 1 to the Fig. 3 position. This is because the L-shaped legs 12, 14 have angular ends mounted in tubular sockets which are set into the rectangular box-shaped column 10 at an angle and secured therein by welding. See the following Fig. 4. Inside the column 10 there are spring-biased means for locking the column in either its folded or deployed positions comprising a plunger 22 and spring 24, the end 22d of the plunger extending outside where an operator can move it from locked to unlocked position by pushing on it. This push may be achieved by the rotation of the pivoted pad P. The inside end of the plunger has protuberances 22a, 22b which can lock in slots in the ends of leg member 12, 14, the inner ends of which are shown at 12c, 14c mounted for rotation in sockets 10c, 10d. Fig. 4 shows the rack in the deployed position of Fig. 3 with plunger 22 in its unlocked position.

FIG. 4

*The District Court's Decision*

The parties having agreed that there were no issues of material fact and having made cross motions on the issue of infringement, the trial court held a brief hearing at which the two racks were demonstrated by counsel and oral arguments were made on August 9, 1993. The court filed its Order on August 18, 1993.

The trial court's Order clearly divides the consideration of the infringement issue into

(1) a question of literal infringement of the claims in suit and (2) consideration of infringement of the patent under the doctrine of equivalents. The key passage (p. 8) on issue (1) reads:

The Saratoga rack does not have a pair of horizontal frame members; rather, the "legs" of that rack are L-shaped with a horizontal and a vertical/diagonal component. Moreover, the horizontal portion of the leg is not attached to the vertical member, instead the vertical/diagonal portion is attached to the vertical member. Accordingly, the court finds that the second element of the plaintiff's patent [see the emphasized portion of claim 1 reproduced supra] cannot be read onto the defendant's storage rack; therefore, the Saratoga rack *does not literally infringe* on the plaintiff's patent. [Emphasis ours.]

This holding is uncontested. The court then continued, stating its view of the application of the doctrine of equivalents as follows:

If literal infringement is not established, the second step is to apply the doctrine of equivalence [sic] to the accused device. The accused structure may infringe upon the patent if it "performs substantially the same function in substantially the same way to achieve the same result as the claimed device." *Malta v. Schulmerich Carillons, Inc.,* 952 F.2d 1320, 1325 (Fed. Cir.1991); *see also Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 608 [70 S.Ct. 854, 856, 94 L.Ed. 1097] (1950). Generally, additions or improvements to the accused device will not preclude a finding of infringement if all the limitations in the patent claims, or the equivalents thereof, are present in the accused device. See, e.g., *Marsh–McBirney, Inc. v. Montedoro–Whitney Corp.,* 882 F.2d 498, 504 (Fed.Cir.1989); *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1057 (Fed.Cir.1988).

The court then proceeded to find that plaintiff's and defendant's devices "serve substantially the same function." The reason given was that both structures are "collapsible storage racks for automobile hardtops." No disagreement with that is possible. The court also recognized that was not enough to comply with the tripartite test of *Graver Tank,* on which it was relying, and that the doctrine of equivalents requires at least that the accused device "perform substantially the same function *in substantially the same way* to achieve the same result as the claimed device." (Emphasis ours.)

The court then proceeded to reject defendant's argument that its rotatable vertical column was not the equivalent of plaintiff's vertical frame member and the further argument that defendant's L-shaped legs and their manner of support are not the equivalents of plaintiff's "pair of horizontal frame members, the rear end of each horizontal frame member being pivotably mounted to the lower end of said vertical frame member for arcuate movement," to quote the critical language of claim 1 of the patent in suit which caused the court to hold there was no literal infringement.

We find ourselves in disagreement with the trial court's conclusions respecting the separable legs of the two devices and their connection to the vertical support member. While they serve, of course, to perform the same *function* of supporting the vertical member when separated and the *function* of being foldable to reduce the floor space occupied by the rack when not in use, that is not enough, as we have already pointed out, and as the trial court seems to have appreciated. Our point of disagreement is that we find they perform these functions in very *different ways* because they are differently constructed, as mere perusal of the drawings shows. Moreover, we, like the trial court, have the actual device of the defendant before us. We will enumerate the half dozen reasons why we conclude they perform in different ways.

Plaintiff's horizontal frame members are straight, parallel to the floor on which they rest, and mounted at their back ends to vertical pivot pins. They are spread apart by hand from paralelism into a V-configuration, an "arcuate movement," and are not locked in either position. Defendant's L-shaped legs are not pivoted on vertical pins but have angular ends, rotatably mounted in correspondingly angled bushings located above the floor by a distance of about half

the total height of the deployed rack. Their horizontal segments are parallel when not deployed and, when separated by the 180° rotation of the box-shaped vertical member, they are still parallel and are automatically locked in place at each position. They are not shaped, supported, moved, or positioned as are the horizontal frame members of the patent and do not meet the "same way" requirement of the *Graver* tripartite test. The doctrine of equivalents is therefore not to be applied because they are not equivalents even if they do perform the same function. *See, Slimfold Mfg. Co. v. Kinkead Ind., Inc.,* 932 F.2d 1453, 18 USPQ2d 1842 (Fed. Cir.1991) (application of doctrine of equivalents proper only when changes from patent's claimed structure are insubstantial). This is not a proper case for application of the doctrine of equivalents. Plaintiff's patent is not infringed.

The grant of plaintiff's motion for summary judgment of infringement is therefore *reversed.* The case is remanded with instructions to grant defendant's motion for summary judgment of noninfringement and for such other action, if any, which may be called for in conformity with this opinion.

No costs.

REVERSED AND REMANDED.