NIES, Senior Circuit Judge,
dissenting.
I.
This appeal raises a novel question respecting the application of principles of “law of the case.” In 1983, this court reversed a judgment of the United States Claims Court, Hughes Aircraft Co. v. United States, 215 USPQ 787 (Cl.Ct.1982) (Hughes VI) that certain store and execute (S/E) satellites did not inflinge the claims of Hughes’ U.S. Patent No. 3,758,051 (the ’051 patent) under the doctrine of equivalents and remanded the ease for a determination of damages. Hughes Aircraft Co. v. United States, 717 F.2d 1351, 219 USPQ 473 (Fed.Cir.1983) (Hughes VII). Upon remand, Hughes asserted that an additional 94 spacecraft, differing in various ways from those that had been litigated, also used the ’051 invention. Subsequent lengthy trial court proceedings resolved the issues of liability respecting these devices. The judgment now before us fixes the amount of compensation due under 28 U.S.C. § 1498.
II.
Hughes VII was one of the first cases of this court to present the issue of infringement under the doctrine of equivalents and resulted in a split decision. Some understanding of the technology and of the different views of the panel is helpful at this point. The ’051 patent is directed to a system for control of a spin-stabilized communications satellite. The patent explains that communications over long distances are possible if the satellite is accurately placed and maintained in a “geosynchronous” orbit. In such an orbit, the position of the satellite and its velocity are such that the satellite appears to hover over one point on the Earth’s surface. Accurate placement and maintenance of the geosynchronous orbit maximizes communications potential.
The importance of satellite placement gives rise to the need to correct for satellite drift. Williams teaches countering satellite drift in real-time by intermittently pulsing attitude control jet valves, which are located on the periphery of the satellite, thereby tilting or “precessing” the satellite. A radio transmitter on the satellite sends instantaneous spin angle (ISA) position and orientation information to a ground crew on Earth. Once the satellite’s existing and desired orientations are determined, the ground crew transmits control signals to the satellite which are synchronized with the spin position and orientation. In response, the control valves are immediately pulsed, precessing the satellite into position.
Claim 1 which is representative of the claims in suit requires (a) a body adopted to spin about an axis; (b) a fluid supply; (c) a valve connected to the fluid supply; (d) fluid expulsion means oriented to expel fluid, and the following additional elements:
(e) means disposed on said body for providing an indication to a location external to said body of the instantaneous spin angle position of said body about said axis and the orientation of said axis with reference to a fixed external coordinate system;
(f) and means disposed on said body for receiving from said location control signals synchronized with said indication;
(g) said valve being coupled to said last-named means and responsive to said control signals for applying fluid to said fluid *1580 expulsion means in synchronism therewith for precessing said body to orient said axis in a predetermined desired relationship with said fixed external coordinate system.
The government spacecraft in issue do not send information to the ground crew and are not preeessed upon a signal sent by the ground crew but are controlled by a stored program in an on-board computer, i.e., a store and execute system (S/E).
The majority, nevertheless, concluded that S/E spacecraft infringe because:
The failure to apply the doctrine of equivalents to the claimed invention as a whole, and the accompanying demand for “obvious and exact” equivalents of two elements the presence of which would have effectively produced literal infringement, was error.
[T]he S/E spacecraft, with the ISA position indication retained on-board, are equivalents of Williams’ claimed satellite, with the ISA position indication sent to ground, performance of the function involving the ISA position being substantially the same in each. We agree.
The S/E spacecraft uses sun pulses retained on-board as reference points to fire the jet. Williams uses sun pulses sent to ground as reference points to fire the jet. The difference between operation by retention and operation by sending is achieved by relocating the function, making no change in the function performed, or in the basic manner of operation, or in the result obtained.
The S/E spacecraft and the claimed Williams satellite reflect the precise circumstance envisaged in Graver, supra, for they perform the same function (receipt of and response to command signals from an external location to accomplish precession), in substantially the same way (jet firings synchronized, albeit later and internally, with ISA position) to obtain substantially the same result (controlled precession of spin axis in a predetermined direction to orient a hovering satellite) .[1]
717 F.2d at 1364-66, 219 USPQ at 482-484.
One panel member, Judge Davis, agreed with the trial court that one or more elements required by the claims was not present in the accused S/E satellites, either exactly or by an equivalent thereof. More particularly, he would have affirmed the trial court’s finding, inter alia, that the accused devices had no equivalent for the required “means ... providing an indication” of the ISA “to an external location.”[2]
[3]The claims expressly call for an attitude control system, a structure, on the spinning body which sends information on the ISA to a ground controller, who determines when a jet should be fired based in part on the ISA information. Judge Davis concluded:
*1581 To find, as the majority does, in this self-contained on-board computer an equivalent of the specific requirement for providing an indication of ISA to the ground (so that the ground can take account of ISA) is simply to obliterate and disregard this element of the claims. These accused structures may possibly obtain “the same result” as Williams but they do not perform “the same function” in “the same way” either literally or substantially. Whether or not this on-board device for calculation would be unobvious — and there is no finding and (to my mind) no showing that it would have been obvious — its substitution was not a proper equivalent for infringement of this non-pioneer patent because the wholly on-board computer device operated in a different way to perform the different function of a significant calculation unrelated to ground personnel.[3] Unlike the Court of Claims decisions cited in the court’s opinion this is not the case of a “sophisticated” technique of performing the same function in the same way. It is a “sophisticated” method of performing a different function in a different way. Even if the standard of “obvious and exact equivalents” (Eastern Rotorcraft Corp. v. United States, 397 F.2d 978, 982, 184 Ct.Cl. 709, 158 USPQ 294 (1968)) is considered as too narrow, the accused devices here are definitely outside the equivalence principle of Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950).
717 F.2d at 1367, 219 USPQ at 485.
The government argues in its brief and at the hearing that the Hughes VI finding of noninfiingement by S/E satellites would be affirmed under the precedent of Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 4 USPQ2d 1737 (Fed.Cir.1987) (in banc), cert. denied, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426, 485 U.S. 1009, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988), and its progeny; and that it should not be held liable for infringement of the ’051 patent for acts which would not constitute infringement by anyone else. Further it urges that this court must apply the law of Hilton Davis Chemical Co. v. Wamer-Jenkinson Co., 62 F.3d 1512 (Fed.Cir.1995) (in banc), cert. granted, — U.S. —, 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996), an in banc case on the doctrine of equivalents then pending, whatever the holding might be. Hughes counters that Hughes VII is not in conflict with Pennwalt and that, in any event, this court should not revisit liability issues after these many years even if the law in the Hughes VII decision is wrong. In addition, Hughes argues that the government waived its right to reargue that its S/E satellites do not use the ’051 invention because the government did not argue below that the law had changed. Respecting Hilton Davis, Hughes argues that it would be manifestly unjust to apply retroactively any new test that might be adopted therein.
III.
Unlike res judicata, the law of the case does not involve preclusion after final judgment, but rather it regulates judicial affairs before final judgment. 18 Charles A. Weight, et al., Federal Practice and Procedure § 4478 (1981). A court will not generally revisit an issue once decided during the course of litigation. “Although courts are often eager to avoid reconsideration of questions once decided in the same proceeding, it is clear that all federal courts retain power to reconsider if they wish.” Id. As Justice Holmes stated, the law of the case doctrine “merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.” Messenger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). The Supreme Court has also explained that “there is a difference between [law of the case] and res judicata; one directs discretion, the other supersedes it and compels judgment.” Southern Ry. Co. v. Clift, 260 U.S. 316, 319, 43 S.Ct. 126, 127, 67 L.Ed. 283 (1922). See also Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). Thus, Hughes is correct that a court has some discretion under “law of the case” principles. However, the federal courts of ap *1582 peals have uniformly recognized that an intervening change in applicable law is a strong basis for reconsideration of a decided issue in a pending case. Dean v. Trans World Airlines, Inc., 924 F.2d 805, 810 (9th Cir.1991) (Supreme Court decision changed applicable law); Miles v. Kohli & Kaliher Associates, Ltd., 917 F.2d 235, 242 (6th Cir. 1990) (state Supreme Court decision changed applicable law in diversity case); Doe v. Anrig, 728 F.2d 30, 31 (1st Cir.1984) (decision by the same court of appeals changed applicable law); Wooster v. Handy, 21 F. 51, 53-54 (C.C.S.D.N.Y.1884) (decree of patent validity reconsidered after Supreme Court decisions relating to the validity of reissued patents).
A.
As an initial matter, Hughes’ argument is clearly untenable that the government has “waived” its right to argue for application of the current law at this stage of the proceedings. The government conceded only that, under our prior Hughes decision, certain additional S/E satellites could not be distinguished from the ones already found to be infringing. Nor could the government appropriately argue to the trial court that it did not have to follow the explicit mandate of this court during the course of the later damages phase because of a change in the law. The trial court must follow the appellate court mandate until the appellate court itself changes it. In re Roberts, 846 F.2d 1360, 1363, 6 USPQ2d 1772, 1774 (Fed.Cir.1988) (“Unlike the authority to reconsider its own rulings, a district court is without choice in obeying the mandate of the appellate court.”). However, at all times, the government expressly preserved the S/E infringement issue for appeal, and Hughes does not challenge the right of the government to petition the Supreme Court for review of all infringement issues. Finality of decision has not been achieved for purposes of further appeal until the majority decision today. Hughes simply argues for our adherence to the law of the case.
There can be no question that the Supreme Court would apply the current law to a pending case. See, e.g., United States Surgical Corp. v. Ethicon, — U.S. —, 116 S.Ct. 1562, 134 L.Ed.2d 662 (1996) (remanding case to apply ruling in Markman v. Westview Instruments, Inc., 517 U.S. —, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) to case decided prior thereto). Therefore, it makes no sense to hold that this court should not apply current precedent to correct its decision in a pending ease. If the law applied in Hughes VII is no longer the law in this circuit, this court has an obligation, under the principles of law of the case, to revisit that issue if failure to do so would work a manifest injustice.
B.
Nor should the passage of time work against the government’s position. While Hughes VII was decided 14 years ago, the delay in the presentation of the issue of “law of the case” has not been due to the government’s procrastination. Hughes’s assertion that additional spacecraft infringed required extensive trials on disparate issues, e.g., whether some were held covered by a release to the manufacturer which they were. The government has not merely been “hoping that the passage of time or change in the composition of the court will provide a more favorable result the second time,” as in a case cited by Hughes, United States v. Turtle Mountain Band of Chippewa Indians, 222 Ct.Cl. 1, 612 F.2d 517, 520 (1979). In that case the government sought reconsideration of an issue fully argued and rejected before. Hughes ellipses from the quotation, “No litigant deserves an opportunity to go over the same ground twice, hoping ... [for a change in the court’s view].” Here, the government argues that the law has been changed in other cases since the first decision.
IV.
It would be surprising, indeed, if no development of the law of infringement had occurred over the 14 years since Hughes VII, and one would have to bury one’s head in the sand to hold it has not. Not only has the test for infringement been restated and refined as in the “All Elements rule” stated in Pennwalt, the rejection of functional equivalency as the test for infringement in Atlanta *1583 Motoring Accessories, Inc. v. Saratoga Technologies, Inc., 33 F.3d 1362, 1366 (Fed.Cir. 1994), and the “insubstantial change rule” set forth in Hilton Davis, discussed infra, but also the correct standards of review of a judgment of infringement were also later articulated for the first time.
Hughes argues that only an outright reversal of the substantive law applied in reaching a decision warrants departure from “law of the case.” I find no controlling authority so holding. If the law has evolved to such an extent that the result in the ease would be different, law of the case principles do not require blind adherence to a wrong result. Conversely, if the result would be the same under current precedent, any error in a prior opinion would be harmless. This brings us to the question of what disposition should be made in this case of the S/E infringement issues.
The dissent in Hughes VII made the type of analysis which must be made under current case law. The actual structure of the specified components of the invention and of the accused devices was considered by the dissenter, not merely the overall equivalency or even the “equivalent” functions of the substituents, to which the majority limited its analysis. Atlanta Motoring, 33 F.3d at 1365-66 (merely functional equivalents not enough for infringement under doctrine); Johnston v. TVAC Corp., 885 F.2d 1574, 1580, 12 USPQ2d 1382, 1387 (Fed.Cir.1989) (structual equivalency of “means” element required under § 112 116). Further, the majority essentially performed a de novo review of the facts and law. The majority held no factual finding of the trial court clearly erroneous respecting the nonequivalency of the accused components, Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc., 906 F.2d 698, 702 (Fed.Cir.1990) (determination of equivalent elements under the doctrine is a question of fact reviewed under clearly erroneous standard); it also did not remand for new factual findings after holding that the trial court erred “as a matter of law,” Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1565, 1 USPQ2d 1593,1595 (Fed.Cir.1987) (in view of legal error, appellate court should remand for trial court to make the missing findings); and it either ruled on equivalency as a matter of law contrary to Hilton Davis, 62 F.3d at 1522, 35 USPQ 2d at 1648 (finding of infringement under the doctrine of equivalents reviewed as a question of fact; not legal or equitable issue) or it substituted findings of its own that the different control system of the accused satellites was equivalent contrary to Atlantic Thermoplastics Co. v. Fay-tex Corp., 5 F.3d 1477 (Fed.Cir.1993) (“fact-finding by the appellate court is simply not permitted”). Either way, the majority’s free wheeling “review” was not in accord with the appellate standards now followed by this court.
V.
This court handed down a plethora of opinions in Hilton Davis. The majority says it merely “restated” the law by returning the doctrine to the original moorings of Graver Tank that only insubstantial changes from the claim fall within the doctrine. Three dissenting opinions and one concurrence were filed setting out widely divergent views of the law.
The Supreme Court has recently taken Hilton Davis for review, its first case on the doctrine of equivalents under the Patent Act of 1952. The petitioner therein urges that literal infringement (which includes equivalents only under 35 U.S.C. § 112 116) should be the sole basis for liability and that the judicially created doctrine of equivalents should be abandoned because it is inconsistent with the current statute. Petitioner argues further that the test for nonliteral infringement set forth in Hilton Davis, directed to the “insubstan-tiality of the differences” from the claimed invention, deprives the public of notice of patent boundaries, offers protection not approved by the PTO, and overrides the statutory reissue provisions. Brief of Petitioner Wamer-Jenkinson, pp. 13-27. Petitioner urges the Court, at most, to recognize nonliteral infringement only where known equivalents are disclosed in the patent application, the situation in Graver Tank. Brief of Petitioner Wamer-Jenkin-son, at 38-41.
*1584 The Supreme Court’s rulings on these issues can be expected to have a major impact on the law of infringement. I conclude that the majority opinion in Hughes VII conflicts not merely with the dissents in Hilton Davis, but with the majority as well. I would, therefore, suspend this appeal pending the Supreme Court’s decision in Hilton Davis.[3] A few months of delay is insignificant in a suit of this magnitude which has been pending since 1973. In my view, it would be a manifest injustice to the people of the United States to end this ease and approve the payment of millions of dollars in compensation to Hughes when the law imposing liability is in a state of such uncertainty.

1. I note that the damage award is based on hovering and non-hovering government spacecraft. It is not disputed that most of the accused satellites are operated in non-geosynchronous orbits, i.e., the satellites and the Earth move at different angular velocities, and therefore, unlike Williams’ satellite, do not have to account for the propagation delay in transmitting the control signals between the satellite and Earth. The majority’s finding of infringement did not, however, distinguish between hovering and non-hovering satellites.

. Judge Davis also concluded respecting other elements:
3. The same is true of the elements specifying the method for controlling the precession jet. In this regard, Williams, again as Judge Colaianni points out, limits its claims so as to require a ground controller, not only to determine the ISA, but also to use the ISA to pulse the precession jet during the desired portion of the spin cycle. As to the latter, the claims in suit also require means for pulsing the precession jet within a fixed time period after the receipt of the control signal. This does not occur in any of the accused structures, nor does the ground location use ISA to determine the execute command.
____ Moreover, in Williams there must be a fixed time period between the receipt by the spacecraft of a control signal and the activation of the precession jet. In the S/E satellites, in contrast, neither the ground nor the execute signal operates to activate the precession jet within a fixed time period (instead, that period varies). The sum of it is that the S/E structures perform a "different function” in a "different way” from those claimed by Williams— and are therefore not within the Graver principle.
717 F.2d at 1367-68, 219 USPQ at 485-86.

 The majority quotes Hughes’ expert as testifying that it would have been obvious to place the calculating device on the spacecraft but the Government's witnesses testified that this device was not an equivalent.

. Contraiy to statements by my colleagues, I do not advocate suspending other pending doctrine of equivalent cases. Such cases should be decided in accordance with principles set forth in this court's majority decision in Hilton Davis. Hughes VII does not meet that test and raises the important issue of whether a substituent in the combination must have been a known equivalent. Without analysis, Hughes VII holds that later developed technology can be an infringing equivalent contraiy to Supreme Court precedent, see e.g., Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 13, 67 S.Ct. 6, 12, 91 L.Ed. 3 (1946).