**AMSTAR CORPORATION,**
Plaintiff/Appellant,

v.

**ENVIROTECH CORPORATION and Energy Fuels Nuclear, Inc.,**
Defendants/Appellees.

**Appeal No. 83–1090.**

United States Court of Appeals,
Federal Circuit.

March 27, 1984.

Gerald W. Griffin, New York City, for plaintiff/appellant. With him on the brief were Norman H. Zivin, New York City, and Donald B. Holbrook, Salt Lake City, Utah.

V. Bryan Medlock, Jr., Dallas, Tex., for defendants/appellees. With him on the brief was Ray G. Wilson, Dallas, Tex.

Before MARKEY, Chief Judge, and FRIEDMAN and DAVIS, Circuit Judges.

MARKEY, Chief Judge.

Appeal from that part of a judgment of the United States District Court for the District of Utah finding non-infringement of U.S. Patent No. 3,523,889 ('889 patent). We *reverse* and *remand.*

## Background

In January 1979, Amstar Corporation (Amstar) sued Envirotech Corporation (Envirotech) and Energy Fuels Nuclear, Inc. (EFN), charging infringement of process and apparatus claims 1 through 10 of the '889 patent, active inducement of others to infringe, and contributory infringement. Envirotech and EFN asserted defenses of non-infringement, invalidity under 35 U.S.C. § 103, and unenforceability for failure to disclose certain prior art to the Patent and Trademark Office (PTO), and counterclaimed for a declaratory judgment of invalidity, non-infringement, and unenforceability.

The action was tried to the court from June 22 through June 30, 1981. The trial transcript ran over 1,150 pages. Some 300 exhibits totaled over 4,000 pages of technical diagrams, photos, and articles. In-court and videotaped experiments were demonstrated, and the court conducted an on-site inspection of a laboratory version of Envirotech equipment. After submission of counsels' supplemental memoranda, the court issued a Memorandum Decision and judgment on May 3, 1983.

## Validity

In its 66-page Memorandum Decision, the district court devoted 59 pages to a thorough discussion of the facts and law governing the validity issue. Though the court confessed to a felt inadequacy respecting the involved technology, much of

its discussion thereof was flawless. Finding that the inventions claimed in the '889 patent (Eis inventions) clearly survived certain nonstatutory (and thus erroneous) tests, the court held the patent valid and enforceable.[1]

The subject matter of the inventions in suit and the real-world milieu surrounding their nature, their birth and growth, and the reaction of experts to these inventions, and the reactions of the industry and of Envirotech, were set forth in the court's Memorandum Decision.

The court generally described the subject matter of the '889 patent:

[A] process and apparatus designed to enable industrial enterprises to separate solids from a large volume of liquid over a relatively short period of time. Far from letting muddy waters settle in their own good time, [the '889 patent discloses] a continuous flow process that takes advantage of the efficacy of chemical flocculating agents in separating solids—especially finely-divided solids—out of a liquid suspension or emulsion, enhanced further by the design of the apparatus and by the specific steps taken in the process.

Citing 29 internal memoranda in evidence as illustrating the skepticism of Envirotech's engineers ("re-written the laws of gravity"; "a new concept ... verdict ... undecided"), and the "great effort" of Envirotech's engineers, technicians, and specialists to gather and analyze data in an attempt "to discern the mechanism by which the Enviro-clear[2] clarifier/thickener operates", the district court stated:

Having expended such great efforts to discover if and how the Enviro-Clear method works, it is ironic at least to some extent for Envirotech to now assert that the Eis process was obvious to those

**1.** As indicated in *Environmental Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 699, n. 9, 218 USPQ 865, 871, n. 9 (Fed.Cir.1983), and in *Jones v. Hardy,* 727 F.2d 1524 at 1529 n. 3 (Fed.Cir. 1984), the court need only have held that Envirotech failed to carry its burden of proving invalidity. 35 U.S.C. § 282. A determination that a patent challenger has failed to carry the § 282 burden equates with the reality that the

result of a patent trial, like that of any other, binds only the parties and those in privity with them.

**2.** "Enviro-clear" is a registered trademark of Amstar, Registration No. 1,093,696, dated June 20, 1978, for its commercial embodiments of the inventions claimed in the '889 patent.

skilled in the art. Perhaps, like a brilliant move in a game of chess, it seems so obvious and simple—after you have once seen it played.[3]

The district court: carefully made the findings required by *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966); avoided the hindsight approach on which it said Envirotech depended; rejected the improper each-element-is-old approach; found that the Eis inventions passed the erroneously "required" tests of "synergism" or "unexpected results"; found that the Eis inventions filled a long felt need unmet by others who tried and failed, caused abandonment of long standing traditional testing methods for this type of equipment, achieved commercial success and trade acceptance, and ran *contrary* to the teachings of the prior art as synthesized in Envirotech's Manual just before Eis made his inventions; found that Eis proceeded "afoul of the rule" taught by the prior art against introduction of feed into the settling zone; found (without designating) that some of the non-PTO considered prior art was cumulative and some was not; and reached the conclusion that the Eis inventions would not have been obvious "based upon a preponderance of all the evidence as independently weighed and considered by this court".[4]

### The Claims

Though claims 1–10 were asserted, the appeal can be determined on consideration of independent claims 1, 8, and 9:

1. A continuous process for rapidly separating finely divided suspended solid materials from liquids at a predetermined controlled rate, comprising the steps of forming a slurry of solid agglomerates in an influent feed of liquid containing finely divided and suspended solids by the addition of a settling aid, forming a settling zone having a relatively stationary upper boundary and containing previously formed solid agglomerates, introducing said influent liquid slurry at a central position within said settling zone and centrally of said previously formed solid agglomerates, arresting the motion of the influent feed and displacing the same outwardly through said previously formed agglomerates to cause additional agglomeration of the solids and the formation without additional agitation of a dense settleable mass of the solids and agglomerates, continuously removing a dense underflow from beneath said settling zone at a rate to maintain said relatively stationary upper boundary, and continuously removing an overflow of clarified liquid from above said upper boundary of said settling zone, whereby separation of the solids and liquids rapidly occurs in said settling zone.

8. A continuous process for treating liquids to remove substances therefrom in the form of solid particles and agglomerated solid particles, which comprises forming and maintaining a settling zone

---

3. An abuse of the judicial process resides as much in the presentation of a knowingly frivolous defense as in the filing of a knowingly frivolous complaint or appeal. No cross appeal was filed and validity is not challenged on appeal. Apparently, Amstar presented to the district court no claim for attorney fees and costs specifically relating to this "ironic" defense.

4. The district court: unnecessarily undertook the extra effort involved in independently re-determining validity *ab initio,* rather than determining on all the evidence whether Envirotech had carried its burden of proving invalidity as the statute requires, 35 U.S.C. § 282; spoke of "synergism" and "unexpected results" as requirements rather than evidence, *see Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1150, 219

USPQ 857, 860 (Fed.Cir.1983); quoted indications that "combination patents" are somehow different and require special scrutiny, *see Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 220 USPQ 97, 99–100 (Fed.Cir.1983); stated that the presumption of validity is "weakened" when non-considered pertinent art is introduced; discussed the obviousness of the "patent" rather than of the claimed inventions; and used the present tense "is obvious" rather than the statutorily required "would have been obvious", *see Rosemount, Inc. v. Beckman Instruments Inc.*, 727 F.2d 1540 at 1543 n. 3 (Fed.Cir. 1984). Those errors, however, tilted in favor of Envirotech and do not in this case affect the district court's holding of validity.

of concentrated slurry containing suspended solid particles and agglomerated solid particles of like nature to those to be formed and sep [sic] separated, mixing solids-containing liquid to be processed with a settling and agglomerating agent, said mixing producing a liquid slurry containing freshly agglomerating solids, introducing said liquid slurry as an influent feed at a central position within said settling zone, arresting the motion of said influent feed and displacing the same outwardly through the concentrated slurry in said settling zone to effect additional agglomerations of the solid particles, whereby relatively large agglomerates of solid particles are formed which settle rapidly without additional agitation to form a dense underflow of agglomerates and entrained solid particles, the point of arresting said influent feed being close to said central point of introduction of the influent feed, controlling the depth of said settling zone by withdrawal of said dense underflow so that said settling zone of concentrated slurry is provided with a relatively stationary upper boundary, the rate of withdrawal of said dense underflow being such that said upper boundary of the settling zone is above the point of arresting the motion of the influent feed, and withdrawing clarified liquid from above said settling zone of concentrated slurry.

9. In an apparatus for rapidly and continuously separating finely divided and suspended solid materials from liquids at a predetermined and controlled rate, a settling vessel having top on bottom outlet means, inlet means including conduit means extending to a centralized position within said settling vessel, means for introducing a substantally [sic] vertical flow of influent feed of liquid containing freshly agglomerating solid materials to said centralized point of entry established by said conduit means, unitary substantially horizontal baffle means adjacent the point of entry established by said conduit means for arresting and altering the direction of motion of said influent feed whereby the influent

feed is directed in a horizontally outward direction with respect to said centralized point of entry, means controlling the rate of discharge of solid materials through said bottom outlet means to control and thereby establish settling and sludge zones above and below said centralized point of entry of influent feed, and means for withdrawing a clarified effluent through said top outlet.

### INFRINGEMENT

As shown by unchallenged evidence, the accused product performs each of the process steps set forth in claims 1 and 8 and contains each of the elements set forth in claim 9. The district court's attention, however, became focused on a mechanical mixer inserted in the feedwell of the accused product, and on the process step performed by it, namely mechanical premixing of the slurry. Led to the erroneous belief that Amstar had argued for patentability on the basis that Eis avoided all mechanical mixing anywhere in the system, under the apparent impression that infringement is avoided when an element of an accused device is not found in the claims, and failing to note the presence in claim 8 of the step of pre-mixing in the slurry, the district court stated:

> The combinative nature of Amstar's patent rights effectively limits the scope of enforceable claims under the Eis patent. If Envirotech's combination of elements differs in a material way from that described by Eis, there is no infringement.

A crucial area of difference between the Amstar and Envirotech equipment is the use of sophisticated mechanical mixing to promote flocculation. The Envirotech device is constructed around the multichamber impeller mixing system; Amstar's Enviroclear equipment uses no mixing blades, relying instead upon inflow injection of flocculant solution into the feed launder or feed pipe using specially designed nozzles.

Following initial rejection of the Eis application, the inventor emphatically ar-

gued that one reason why the Enviroclear process was novel, non-obvious and patentable was its use of other than mechanical means:

> One point particularly stressed during the interview was the fact that applicant's claimed process and apparatus effects a separation of finely divided and suspended solids from an influent feed at an unusually rapid rate, *without relying upon* either the accretion or *growth of agglomerates through forced agitation* or the use of a free settling zone.

\* \* \* \* \* \*

While counsel for Eis was not specifically referring to the mixing apparatus now described in the Emmett Patent and used in the Hi-Capacity Thickeners, it seems plain that Envirotech relies upon mechanical stirring to achieve good flocculation while the Eis/Amstar equipment does not.

\* \* \* \* \* \*

Disclaimer of mechanical mixing to achieve good flocculation, made in the course of the prosecution of the Eis patent, would exclude mechanical mixing as an "equivalent" as a consequence of this doctrine of "file wrapper estoppel."

\* \* \* \* \* \*

The Eis patent as issued makes no claim which by its terms encompasses mechanical mixing to achieve optimum flocculation. To even accept the argument that the Emmett apparatus is an equivalent, one would have to wholly disregard the positive effects of the mechanical mixing system. This cannot reasonably be done in light of all of the evidence.

\* \* \* \* \* \*

This Court finds as a matter of fact that the Emmett/Envirotech invention is not the Eis/Amstar invention and concludes as a matter of law that the former does not infringe upon the plaintiff's valid rights in the latter within the meaning of 35 U.S.C. § 271. Amstar retains enforceable legal rights in its specific process, but not in the general result. It must be remembered that combination patents are to be carefully scrutinized [citations omitted].

\* \* \* \* \* \*

Even assuming that some initial diagrams and models of the Envirotech equipment followed too closely the outline first propounded by Eis, the paths of the parties have long since diverged and initial resemblance, now avoided, has done the plaintiff no cognizable injury or wrong. Plaintiff's complaint should be dismissed. Defendants' claims of patent invalidity should be dismissed.

\* \* \* \* \* \*

### Issue

Whether the district court erred in reaching its determination of non-infringement.

### OPINION

■ Though literal infringement of a properly interpreted claim is a fact question, its determination may be rendered clearly erroneous through an improper interpretation and application of the governing law. In that event, as here, the determination must be overturned as having resulted from error as a matter of law.

■ The law of infringement requires that the asserted claims be compared with the products or processes accused of infringement. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328 (1950); *Rel-Reeves, Inc. v. United States*, 534 F.2d 274, 209 Ct.Cl. 595 (1976); *Astra-Sjuco, A.B. v. U.S. International Trade Commission*, 629 F.2d 682, 207 USPQ 1 (CCPA 1980). That was not done here. On the contrary, in the seven pages of the Memorandum Decision devoted to the infringement issue, it is made clear that the district court was led to take a wrong turn in determining the infringement issue.

■ Infringement is not determined by comparison between parts of the description in a patent and the accused process or product, or by comparison between com-

mercial products sold by the parties. Accused products made, sold, or used, and accused processes performed, before suit must be compared with the claims. That products may have been modified after suit is brought, and may or may not be accused of infringement, does not remove the need for that comparison.

 Modification by mere *addition* of elements of functions, whenever made, cannot negate infringement without disregard of the long-established, hornbook law expressed in *Cochrane v. Deener*, 94 U.S. 780, 786, 24 L.Ed. 139 (1876); *Eastern Rotorcraft Corp. v. United States*, 397 F.2d 978, 981, 104 Ct.Cl. 709, 154 USPQ 43, 45 (Ct.Cl.1968) (infringement not avoided by adding an additional element); *McCullough Tool Co. v. Well Surveys, Inc.*, 343 F.2d 381, 402, 145 USPQ 6, 22 (10th Cir. 1965), *cert. denied* 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851, 148 USPQ 772 (1966) ("But infringement cannot be avoided by the mere fact that the accused device is more or less efficient or performs additional functions."); *Acme Highway Products Corp. v. D.S. Brown Co.*, 473 F.2d 849, 855, 177 USPQ 130, 135 (6th Cir.), *cert. denied* 414 U.S. 824, 94 S.Ct. 125, 38 L.Ed.2d 57, 179 USPQ 321 (1973) ("An accused device cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent."). Further, the law recognizes the irrelevance of apparatus distinctions in determining infringement of process claims. *International Glass Co. v. United States*, 408 F.2d

395, 400, 187 Ct.Cl. 376, 161 USPQ 116 (Ct.Cl.1969).

Thus an accused product could not be found non-infringing because it lacked a flared outlet feed pipe, that element being irrelevant because it is present only in *non-asserted* claim 11. Nor could substitution of a rotating disc for the baffle of claim 9 escape infringement, the two being equivalent and the substitution bearing no relation to claims 1 and 8. Nor could absence from the claims of a limitation to mechanical mixing *before* introduction of the slurry into the settling zone be thought controlling, when claim 8 specifically mentions pre-mixing (whether or not mechanical) and pre-mixing bears no relation whatever to claims 1 and 9. Similarly, the presence of additional ("lamella") plates in some Envirotech drawings cannot negate infringement, lamella plates being irrelevant because they are not included in the accused products as sold, because they have no effect on the processes of claims 1 and 8, and because they are not an element of product claim 9.

Often, as here, consideration of the infringement issue may be benefitted by recognition of the findings made in considering the validity issue (Envirotech tried various schemes to "neutralize Enviro-clear's influence" and "counteract the Enviro-clear threat"; Envirotech's apparatus and process "[bear] a striking resemblance to the preferred embodiment of the Amstar apparatus and process described in the Eis patent".[5]

---

**5.** Amstar's brief refers to Envirotech's "willful and deliberate infringement". Envirotech's brief makes no claim that counsel was consulted before it elected to produce and sell the accused products. The district court's findings would appear to support the "willful and deliberate" characterization. Nonetheless, no finding of willful infringement was made, and the question is therefore not before us. Presumably, the district court will consider on remand Amstar's requests for such findings and for costs, treble damages, and attorney fees.

Similarly, though Amstar points to Envirotech's corporate policy of disregarding the patent rights of others, as reflected in its being held in contempt of court four times in a patent case, *Peterson Filters & Engineering Co. v. Eimco*

*Corp.*, 155 USPQ 89 (D.Utah 1967), *aff'd*, 406 F.2d 431 (10th Cir.1968), *cert. denied* 395 U.S. 963, 89 S.Ct. 2105, 23 L.Ed.2d 749 (1969); 166 USPQ 425 (D.Utah 1970); 174 USPQ 185 (D.Utah 1972); 178 USPQ 337 (D.Utah 1973), that policy is not before us. Envirotech's approach to the patent system and its disregard of plaintiff's patent rights and court orders in *Peterson Filters* is of general interest, however, in light of its having sought and obtained a patent on one of its modified versions (Emmet). Though that happened seven years after the '889 patent issued, Envirotech did not cite the Eis inventions to the PTO, a lapse on which the district court commented: "Ironically, the Emmet patent does not list the Eis patent as a relevant prior art example".

Important to determination of the infringement issue, also, are the findings establishing the *pioneer* nature of the Eis inventions (Eis abandoned the traditional design of thickening equipment; results obtained were "surprising", "striking", "unexpected" and "synergistic"; Eis' process is "far more effective" than conventional equipment; "Nothing ... indicated the kind of results one could obtain if the Eis process was used"; the entire industry testing procedure was modified or abandoned "wholly dependent upon the teachings of the Eis patent").

■ The statute provides no support for the district court's statement that "the combinative nature of Amstar's patent rights effectively limits the scope of enforceable claims under the Eis patent". There is no separate classification of "combination patents" and no basis for considering claims to combinations of elements differently from any other. *Richdel, Inc. v. Sunspool Corp.,* 714 F.2d 1573, 1579, 219 USPQ 8, 12 (Fed.Cir.1983); *Medtronic, Inc. v. Cardiac Pacemakers,* 721 F.2d 1563, 220 USPQ 97, 100 (Fed.Cir.1983).

As discussed *infra,* a statement made during prosecution of the application for the '889 patent which related to avoidance of mixing *in the settling zone,* cannot be applied as a form of estoppel precluding application of the claims to Envirotech's apparatus which *also* avoided mixing in the settling zone.

The district court's Memorandum Decision overlooked the claim charts (Px 32) introduced and analyzed at trial and presented here as part of Amstar's brief on appeal. Those charts establish unequivocally that the accused apparatus employed at Envirotech's pilot plants, and as originally sold to Eagle Coal and Dock and to EFN, constituted literal infringements of claims 1, 8, and 9.

■ The record further illustrates that the modifications assertedly made by Envirotech, whenever they may have been made, are either irrelevant or fail to escape infringement. The accused products, including those modified, are the same, they perform the same function in the same way, and they achieve, as the district court found, the same result as the claimed inventions. *See Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 41–42, 50 S.Ct. 9, 12–13, 74 L.Ed. 147, 3 USPQ 40, 44 (1929).

■ In this case, the merely colorable variations so vigorously pressed by Envirotech are of a kind with those described by the Supreme Court as fostering "the piracy" and consequent defeat of the disclosure purpose of the patent system. *Graver Tank, supra,* 339 U.S. at 607, 70 S.Ct. at 855, 85 USPQ at 330. Infringement . is clear on this record.[6]

### Envirotech's Brief [7]

The brief filed by Envirotech on this appeal, presented to assist this court in determining that the finding of non-infringement was not clearly erroneous, contains *not one* reference to any step of process claims 1 and 8, or to any element of product claim 9, that is even asserted to be absent from the accused processes and products of Envirotech.

Unable to point to any part of Eis' claimed inventions not appropriated by it, Envirotech says it avoided infringement solely because it *added* mechanical pre-mix-

---

**6.** The district court's treatment of differences in the Amstar and Envirotech *commercial* products included a statement (repeated in Envirotech's brief here) that Amstar's approach to equivalence could lead to a conclusion that, except for a simple design difference, "a Phillips head screwdriver is a standard screwdriver". The district court's error of law, repetition of which is sought here by Envirotech, lies in the failure, as above indicated, to compare the *ac-*

*cused* products and processes with the *claimed* products and processes.

**7.** Envirotech challenges none of the findings on which rests the district court's conclusion that the '889 patent is valid. Nor does Envirotech challenge the district court's finding that it produced the accused products because its thickener business was "in jeopardy" as a result of Amstar's presence in what Envirotech's engineers called its "sandbox".

ing in the feedwell.[8] Unable to escape or distinguish any of the many authorities cited in Amstar's brief clearly explaining why that position is contrary to law, Envirotech simply ignores them all.

Envirotech's brief says the modifications discussed by the district court played no role in its non-infringement finding, and that the district court properly found non-infringement because it held that the claims of the '889 patent, in Envirotech's words, "did not encompass the mechanical mixing employed by Envirotech to achieve optimum flocculation". Envirotech's brief then describes its pre-mixing impellers and baffles and says *"They* cannot therefore infringe any claim of the Eis patent" (emphasis added). Of course "they" cannot infringe, "they" are not charged as infringements, "they", as the authorities make plain, are simply and totally irrelevant, *see*, e.g., *Eastern Rotorcraft, supra,* 397 F.2d at 981, 104 Ct.Cl. 709, 154 USPQ at 45.

■ Envirotech's brief repeatedly states (without record citation) that the district court "compared the Envirotech apparatus with the Eis claims", and, at the same time, that "a claim-by-claim determination would have been superfluous once the court found a feature [Envirotech's mechanical pre-mixing] missing from all the claims". That view would stand the law of infringement on its head, and would fatally undermine the long-established legal principle that non-infringement is shown when an element or step in the claims is missing from the accused product or process, not vice-versa.

Envirotech then says that the district court interpreted the scope of the claims in suit as excluding Envirotech's mechanical pre-mixing in the feedwell, and that the claims cannot therefore be expanded to in-

clude a functional equivalent of that pre-mixing in the feedwell. The argument is, in all charity, disingenuous. The list of elements and steps "excluded" by the claims in suit, as by every patent claim, is infinite. Nor is there any need whatever to "expand" the claims to "include" a functional equivalent of Envirotech's pre-mixing in the feedwell. The existence and function of pre-mixing in the feedwell (though the district court was led astray respecting them) are simply of no moment whatever. It is not the law that each element of Envirotech's accused process and product, or an equivalent of each element, must be found in the claims. The *claims* are not accused of infringing anything. Envirotech is obviously free to use its pre-mixing chamber *per se* to its heart's content.[9]

■ Pre-mixing would be relevant only if it were listed as an element or step in a claim and if it were *absent* from Envirotech's apparatus and process. When, as here, Envirotech adds its pre-mixing chamber to apparatus that, in its structure and in the process it performs, literally infringes claims 1, 8, and 9, infringement is not by that addition avoided.

Envirotech says Amstar seeks to define a "gossamer" boundary for the claims, and attempts a "total eclipse of the technology where the district court found the penumbra of the claims strictly delineated". As sole support for that statement, Envirotech quotes the district court: "Amstar retains enforceable legal rights in its specific process, but not in the general result", and its statements that the claims "exclude" and do not "encompass" mechanical mixing in the feedwell. Nowhere does or can Envirotech indicate wherein it is not employing precisely the claimed "specific process", or wherein an unpatentable "general result"

---

8. The equally irrelevant presence of lamella plates and absence of a flared feedwell outlet or a flat baffle plate are not mentioned in Envirotech's brief. At oral argument it was asserted, without support in the record, that some product of Envirotech discharged the slurry longitudinally rather than outwardly into the settling zone.

9. Or to refrain from its use. The uncontradicted testimony at trial was that Envirotech's customers simply *deactivated* or removed the mechanical mixers in the feedwell of Envirotech's products. Whether mixers in the feedwell were or were not used is, however, totally irrelevant.

is at all relevant. Nor, as above indicated, does Envirotech support the district court's misinterpretation of the law of infringement reflected in its "exclude" and "does not encompass" statements.[10]

Envirotech's effort to create a prosecution history ("file wrapper") estoppel wastes the court's and opposing counsel's time, because the effort is devoted to "proving" what is unchallenged and irrelevant, i.e., that claims 1 and 9 "clearly" do not "include" mechanical mixing in the feedwell.[11]

Moreover, Envirotech argues (contrary to the record) that exclusion of such pre-mixing was the sole basis for allowance, and goes on to employ a distorted quotation from Eis' prosecution history, the distortion constituting a deletion of precisely the language which totally undermines its argument:

As presented to the court by Envirotech, the quote is:

> ... [F]orced hydraulic or mechanical agitation to obtain growth or accretion of agglomerate particles ... is entirely contrary to the concept of applicant's invention, and would defeat applicant's purpose through action of fluid forces in shear which would disrupt and break up the dense clumps of agglomerates which form as a result of applicant's processing.

As it appears in the prosecution history, the full segment reads (material underlined is that deleted by Envirotech):

> With respect to the cited prior art, it was pointed out that each of the patents to Robinson, Parker et al. and McBride relied upon a forced hydraulic or mechanical agitation to obtain a growth or accretion of agglomerate particles which were then forced upward by the fluid flow to a sludge or solids collector near the top of the liquid-solids contact zone. Such concept is entirely contrary to the concept of

applicant's invention, and would defeat applicant's purpose through action of fluid forces in shear which would disrupt and break up the dense clumps of agglomerates which form as a result of applicant's processing.

The portions deleted by Envirotech make clear that the remarks were directed to reactor-clarifiers of the prior art, in which agglomerate particles are "forced upward". That prior art did not deal with "thickeners" in which solids are settled by gravity in a *settling zone*. Indeed, that prior art was so remote from the claimed inventions that Envirotech presented no testimony whatever about them at trial.

Though its Memorandum Decision contains conflicting statements touching the matter, the district court was clearly influenced by the effort of Envirotech to construct a fog of false estoppel. The district court said, "Disclaimer of mechanical mixing to achieve good flocculation, made in the course of the prosecution of the Eis patent, would exclude mechanical mixing as an 'equivalent' as a consequence of this doctrine of 'file wrapper estoppel' ".

It is absolutely clear from the uncropped quote above, and from the prior art listed in the full quotation, that Eis' counsel was distinguishing from that prior art on the basis that Eis' inventions avoided mixing *in the settling zone*, and that counsel's remarks had nothing whatever to do with mixing of the slurry *before* it entered that zone. That fact is further confirmed by the submission, contemporaneously with the quoted remarks, of claim 1 with its introduction of the slurry into the settling zone "without additional agitation" of the solids mass in that zone, of claim 8 with its additional step of "mixing producing a liquid slurry" to be introduced into the settling zone (a *claimed* step can hardly be held to have been "disclaimed"), and of claim 9 which makes no reference whatever

---

10. Envirotech says its pre-mixing in the feedwell "promote[s] flocculation throughout the apparatus", but there is no evidence of record to support that statement. If there were, the assertion would nevertheless be irrelevant in view of

the clear infringement of the claimed process and product claims.

11. The effort could never establish an absence of "mixing" from claim 8.

to mixing. Confirmation resides also in the findings of the district court that the Eis process is one for *"settling* slurries of finely divided solids without reliance on mechanical agitation" (emphasis added)· and that "counsel for Eis was not specifically referring to the mixing apparatus now described in the Emmet [Envirotech] patent and used [in the accused products]". Envirotech simply ignores the clear showing in the record which directly refutes its "estoppel" argument.

Envirotech, as the claims specify, avoids ·mechanical agitation where the inventions are, i.e., in the *settling zone.* Envirotech's "estoppel" argument is simply devoid of merit.

■■■ Distortion of the record, by deletion of critical language in quoting from the record, reflects a lack of the candor required by the MODEL RULES OF PROFESSIONAL CONDUCT, Rule 3.3 (1983), wastes the time of the court and of opposing counsel, and imposes unnecessary costs on the parties and on fellow citizens whose taxes support this court and its staff. A quotation containing deletions that so clearly distort the meaning and relevance of the quotation as to render it misleading will not in this court be encouraged by acquiescence.[12]

### Costs

■■■ Because Envirotech's brief relies on a reverse statement of the law of infringement, ignores the numerous and unanimous contrary authorities called to its attention by Amstar's main brief, distorts a quotation, and presents an estoppel argument based on that distortion, Envirotech shall pay to Amstar an amount equating to double Amstar's costs on this appeal. *Asberry v. United States Postal Service,* 692 F.2d 1378, 215 USPQ 921 (Fed.Cir.1982).

### Remand

The case is remanded for consideration of an injunction against further infringe-

ment by Envirotech and for an accounting of damages "adequate to compensate" Amstar for infringement. 35 U.S.C. § 284.

REVERSED and REMANDED.

DAVIS, Circuit Judge, concurring and dissenting.

I concur in the result on the merits and in the opinion with the exception of the parts headed "Envirotech's Brief" and "Costs", but dissent from the award of double costs though I certainly agree that the appellee's quotation from the prosecution file should not have been cropped.

---

12. In the words of Elihu Root, "[a]bout half of the practice of a decent lawyer is telling would-be clients that they are damned fools and should stop". *See McCandless v. Great Atlantic and Pacific Tea Company,* 697 F.2d 198, 201 (7th Cir.1983).